**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSE FERNANDEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  EP-12-CV-00126-ATB** |
| | § | **(by consent)** |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION[1],** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties have consented to trial on the merits before a United States Magistrate Judge.  The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.  After considering the briefs, the record evidence, the transcript of the administrative hearing and the written decision of the Administrative Law Judge ("ALJ"), the Court REVERSES the final decision of the Commissioner and REMANDS it for further consideration and administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

## BACKGROUND

Plaintiff **Jose Fernandez** was born on May 25, 1954, making him fifty-six years old at the time of the ALJ's decision.  (R. 114).[2]  He attended school through the third grade in Mexico and is unable to speak, read or write English.  (R. 150-151, 155).  He has previous work experience operating heavy equipment, working in quality control and as a welder.  (R. 20, 25, 152).  His longest held job was as a construction laborer.  (R. 152).  He reported that he can no longer work due to back pain.  (R. 151).  He also testified that he experienced pain in his feet and his left hand and has a history of high blood pressure.  (R. 20-21).  Plaintiff reported waking up constantly due to pain in left hand.  (R. 170).  Plaintiff estimated that he could only walk at most two blocks before pain or discomfort force him to stop.  (R. 22).  He also testified that he could only stand for forty-five minutes at a time and lift no more than fifteen pounds.  (R. 22, 23). Plaintiff also reported that he did his own grocery shopping once a week and left the house four times a week.  (R. 172).  Plaintiff reported being able to drive himself.  (R. 172).  Plaintiff testified that he wore a back brace on the advice of a chiropractor.   Plaintiff testified to taking ibuprofen and cyclobenzaprine to manage his pain.  (R. 23).  Plaintiff also complained of side effects brought about by his medication, including sleepiness and nervousness.  (R. 23).  Plaintiff also stated that he had a history of rectal bleeding but that it no longer bothered him and it was no longer being treated.  (R. 21).

---

[2] Reference to court documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])."  Reference to the record of the administrative proceedings is designated by "(R. [page number(s)])."

## PLAINTIFF's MEDICAL HISTORY

In his application for benefits, Plaintiff claimed disability due to lower back pain, pain in his right leg and his hands, and high blood pressure which have rendered him unable to work since June 24, 2009.  (R. 151).  Plaintiff also has a history of recurrent anal fistula and rectal bleeding.  (R. 227).  Plaintiff reported he took Cyclobenzaprine for the pain and Benicar for his heart.  (R. 208).

Plaintiff was first examined by Dr. Samuel Roman on June 8, 2007.  Plaintiff reported that attempting to lift any object, even five pounds, triggers or aggravates lumbar pain.  (R. 211).  Plaintiff was awake, alert, oriented, and no acute distress was observed.  (R. 211).  Plaintiff could bend over to a 90 degree angle and could ambulate without assistance.  (R. 211).  He stated that he could remain sitting for hours and could perform any duty while sitting.  (R. 211).  He also reported that ibuprofen partially helped manage the pain.  (R. 210).  A physical examination showed that Plaintiff's blood pressure was 133/78 (pre hypertension).  (R. 211).  Dr. Roman concluded that Plaintiff had back pain.  (R. 212).

An x-ray ordered that day found that Plaintiff's lumbar alignment was satisfactory.  (R. 213).  His vertebral segments were normal in configuration and there was no sign of fracture or bone destruction.  (R. 213).  Disc spaces were maintained, and there was no facet arthopathy and no paravertebral abnormality.  (R. 213).  Dr. Chetan Moorthy interpreted the x-ray and concluded negative lumbar spine.  (R. 213).

Between January 14, 2008 and April 10, 2009, the Plaintiff saw a series of treating physicians including Dr. Victor Villalobos for medical care involving colds, allergies, high blood

pressure, and back pain. (R. 215-219, 223).  An undated prescription in the records shows that at some time, Plaintiff took Nimesulide and Dexamethasone, two anti-inflammatory drugs used for the treatment of pain and allergies.  (R. 217).  On January 14, 2008, Plaintiff saw a certified physician's assistant who recorded he had high blood pressure (hypertension).  (R. 223).  A series of ECG/EKG taken showed normal results.   (R. 220-222). Plaintiff refused further treatment at that time due to expense.  (R. 223).  On March 25, 2008, Plaintiff complained of back pain, chest pain, and abdominal pain, and he was diagnosed with back pain and severe hypertension by Dr. W.O. Ghans.  (R. 219).  He was prescribed medication to treat the abdominal and back pain, and the hypertension.  (R. 219).  On April 10, 2009, Plaintiff was again diagnosed with hypertension, bilateral leg edema, and ankle edema by another certified physician's assistant.  (R. 218).

Plaintiff was given a consultative examination in October 2009 by Dr. Onyema Amakiri. (R. 240).  Plaintiff reported lumbar and leg pain but when tested, it was determined that he had a full range of motion and required no ambulatory assistance.  (R. 242, 243).  His movement was normal and he was able to reach an object when asked to do so.  (R. 242).  An x-ray found moderate disc space narrowing at the L1-L2 level with anterior endplate osteophyte formation. (R. 244).  Mild anterior endplate osteophyte formation was seen in the remaining of the lumbar spinal levels.  (R. 244).  There was moderate to severe facet arthopathy at the L3-L4 level.  (R. 244).  There was severe facet arthropathy observed at the L4-L5 and L5-S1 level.  (R. 244).  The medical conclusion was that there was no acute osscous abnormality.  (R. 242, 244).

Plaintiff also complained of hand pain and hypertension.  (R. 241).  Plaintiff's hand

strength was rated at 5/5 and he was found to have no limitation handling, carrying or lifting objects.  (R. 243).  Plaintiff was diagnosed with limb pain, hand pain, lumbago, and malignant hypertension.  (R. 243).

On November 10, 2009, consulting physician, Dr. Laurence Ligon, conducted a physical RFC assessment based on the available medical records.  (R. 255).  His opinion was that Plaintiff's alleged limitations were partially supported by the records.  His diagnosis was that Plaintiff had lumbago, hand pain, and hypertension.  (R. 255).  He determined that Plaintiff could occasionally lift/carry 50 pounds, frequently lift 25 pounds, stand and sit for six hours, and participate in unlimited push/pull activities. (R. 249).  He also concluded that Plaintiff could frequently kneel, crouch, and crawl, but only occasionally climb, stoop, and never balance.  (R. 250).  Finally, he found that Plaintiff had no reaching limitations and no communicative or environmental limitations.  (R. 250, 252).

## PROCEDURAL HISTORY

Plaintiff filed his DIB application on August 18, 2009, alleging disability since June 24, 2009.   (R. 114, 119).  Plaintiff's application was initially denied on November 13, 2009, and then again denied upon reconsideration on December 31, 2009.  (R. 34, 48).  Plaintiff requested and was granted a hearing before an administrative law judge (ALJ) and a video hearing was held on October 13, 2010, at which Plaintiff, via interpreter, and a vocational expert testified. (R. 16-28).

On October 29, 2010, the ALJ issued a decision finding that Plaintiff could perform a full range of medium work.  (R. 13).  The ALJ found that Plaintiff had the following severe

impairments: back pain, osteoarthritis and a history of rectal fissure.  (R. 12).  However, the ALJ found that Plaintiff was still capable of performing his past relevant work as a machine operator. (R. 14).  Plaintiff's request for review was denied by the Appeals Council on February 7, 2012. (R. 1-6).

Plaintiff filed his complaint on April 9, 2012.  (Doc. 4).  The Commissioner filed his answer on June 18, 2012.  (Doc. 14).  That same day, a transcript of the administrative proceedings was filed.  (Doc. 16).  On July 19, 2012, Plaintiff filed his brief in support of reversing the Commissioner's decision and remanding for an award of benefits or, alternatively, for additional administrative proceedings.  (Doc. 20).  On September 13, 2012, the Commissioner filed his response in support of the ALJ's decision.  (Doc. 22).  The Plaintiff filed his reply on September 24, 2012.  (Doc. 23).  The case was then transferred to this Court on December 6, 2012.  (Doc. 24).  This matter, being fully briefed, is now ripe for decision.

## DISCUSSION

### A.    *Standard of Review*

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of

credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983)) (per curiam). "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360. Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

**B.** *Evaluation Process and Burden of Proof*

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)).   In determining disability, the ALJ makes his/her findings according to a sequential five-step evaluation. 20 C.F.R. § 404.1520.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of her medical condition or her age, education and work experience.  20 C.F.R. § 404.1520(b).

The ALJ then determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe under the second step.  20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone*, 752 F.2d at 1101.

Any application of this standard will be presumed incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106. An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the fourth step.

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is the claimant's maximum work capability. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 404.1520(e). At the fourth step, the ALJ reviews the RFC assessment and the demands of her past relevant work.[4] 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work she has done in the past, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

If an individual's impairment precludes her from performing her past relevant work, the fifth and final step evaluates the claimant's ability, given her residual capacities, her age, education, and work experience, to do other work. If an individual's impairment precludes her from performing any other type of work, she will be found to be disabled. 20 C.F.R. §

---

[4] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b).

404.1520(f).

An individual applying for supplemental security income benefits bears the initial burden of proving that she is disabled for purposes of the Social Security Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work. *Anderson v. Sullivan*, 887 F.2d at 632.

## C.    *ALJ's Decision*

The ALJ issued a decision on October 29, 2010. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 24, 2009, the alleged onset date. (R. 12). At step two, the ALJ determined that Plaintiff had the following severe impairments: back pain, osteoarthritis, and history of rectal fissure. (R. 12).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment under step three. (R. 12). The ALJ found that Plaintiff has the RFC to perform a full range of medium work. (R. 12).

Based on this RFC, the ALJ determined that Plaintiff was able to perform his past

relevant work as a machine operator, and ruled that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 14-15).  Consequently, the ALJ did not have to proceed to step five.

## E.    *Application*

Plaintiff challenges the ALJ's ruling on three grounds.   Plaintiff claims that the ALJ committed legal error because she failed to make findings regarding the medically determinable nature, severity, or limiting effects of all of Plaintiff's impairments and to the extent that she did, it is not supported by substantial evidence.  In particular, Plaintiff alleges that the ALJ failed to consider the following impairments at step two: Plaintiff's left hand pain, hypertension, and right lower extremity pain.  (Doc. 20:3).  It follows that Plaintiff also argues that the ALJ failed to discuss those impairments in conjunction with the impairments she did find to be severe. Plaintiff also argues that the RFC determination was not supported by substantial evidence because it failed to reflect all of Plaintiff's limitations.  (Doc. 20:9).  Specifically, Plaintiff alleges that the ALJ failed to include limitations related to Plaintiff's back pain.  (Doc. 20:8-9). The Court will address each of Plaintiff's claims in turn.

1.   The ALJ Failed to Properly Consider the Nature, Severity, or Limitations of All of Plaintiff's Impairments

Plaintiff contends that the ALJ was required to make findings on all of Plaintiff's medically determinable impairments.   (Doc. 20:3).   The Commissioner first responds that because the ALJ proceeded to step four, it is irrelevant that the ALJ failed to make findings on all of the impairments.  (Doc. 22:2).   Furthermore, the Commissioner argues that the ALJ implicitly considered the combined effects because she cited to the appropriate regulation and

relied on physicians' opinions that considered the impairments.  (Doc. 22:3-4).  Finally, the Commissioner states that regardless, the mere presence of hypertension is not disabling because it is controlled by medication.  (Doc. 22:4).  Specifically, in regards to the pain in Plaintiff's left hand and right lower extremity, the Commissioner suggested that Plaintiff's left hand and lower extremity pain may be symptoms of his osteoarthritis (Doc. 22:2).

The claimant bears the initial burden of establishing the existence of impairments which "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. § 404.1508. Medically acceptable evidence includes observations made by the physician during physical examinations and is not limited to the narrow strictures of laboratory findings or test results. *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Once the claimant meets this burden, the Commissioner must decide whether the alleged impairment is an impairment at all within the meaning of the term.  If not, there is no error in failing thereafter to mention or analyze it further.  *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam).  When determining whether a claimant's impairment or impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity, and may not "pick and choose" only the evidence that supports his position.  *Loza*, 219 F.3d at 393.

Under *Stone v. Heckler*, an impairment is "not severe" "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." 752 F.2d at 1101. If the ALJ does find a medically severe combination of impairments, "the combined impact of the impairments [must] be considered throughout the disability determination process." 20 C.F.R. § 404.1523. Here, the ALJ found that Plaintiff had the following severe impairments: back pain, osteoarthritis and a history of rectal fissure. (R. 12). The ALJ did not make any findings on whether Plaintiff's left hand pain, hypertension, or right lower extremity pain were medically determinable impairments or whether they were severe.

        a.       *Plaintiff's Hypertension Is a Medically Determinable Impairment*

The record is replete with instances of Plaintiff's hypertension being diagnosed in a clinical setting. Plaintiff first showed signs of prehypertension in his June 8, 2007 visit with Dr. Samuel Roman. (R. 211). On January 14, 2008, a certified physician's assistant first recorded his hypertension. (R. 223). At that point, every subsequent visit to a clinic concluded with a diagnosis of hypertension. In March 25, 2008, he was diagnosed with severe hypertension by W.O. Ghans, M.D. after complaining of chest pains. (R. 219). In his report, Dr. Ghans left a note cautioning himself to be careful prescribing medications to treat the hypertension without labs. (R. 219).

Despite being prescribed medication to control the hypertension, the Plaintiff continued to be diagnosed with hypertension. Plaintiff was again diagnosed with hypertension on April 10, 2009, when he was seen by another certified physician's assistant. (R. 218). Even the state

agency's consulting and non-examining physicians concluded that the Plaintiff had hypertension. In October 2009, Plaintiff was examined by consulting physician Dr. Onyema Amakiri.  Plaintiff reported experiencing anxiety, fatigue, and headaches.  Plaintiff also reported that the medication improved his condition.   (R. 241).   Dr. Amakiri diagnosed the Plaintiff with malignant hypertension.  (R. 243).  One month later, the non-examining physician, Dr. Laurence Ligon, confirmed the diagnosis of hypertension which he listed as a secondary diagnosis.[5] (R. 248, 255).

Medical evidence must support a physician's diagnosis, but if it does "[t]he expert opinion[] of a treating physician as to the existence of a disability [is] binding on the fact-finder unless contradicted by substantial evidence to the contrary."  *Loza*, 219 F.3d at 393.  The ALJ's opinion reflects no consideration of the alleged severe impairment of hypertension.  (R. 12-14). The ALJ made one brief mention of Dr. Amakiri's hypertension diagnosis but failed to discuss any of the previous three times Plaintiff had been diagnosed with hypertension.  (R. 14). Because the ALJ failed to include it as an impairment, she failed to consider the effect of Plaintiff's hypertension in combination with his other impairments. (R. 13-14).   When determining whether Plaintiff's impairments, singly or in combination, were severe, the ALJ was required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, was sufficiently severe.  *Loza,* 219 F.3d at 393. Moreover, she was required to consider the combined impact of the impairments throughout the disability determination process. 20 C.F.R. § 404.1523.  The ALJ committed error when she failed to consider the effect of Plaintiff's hypertension in compliance with 20 C.F.R. § 404.1523.

---

[5] Dr. Ligon's listed lumbar arthopathy as the primary diagnosis.  (R. 248).

The Commissioner argues that because the ALJ proceeded to step four, it is irrelevant that the ALJ failed to make findings on all of the impairments.  (Doc. 22:2) (citing *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  However, the line of cases that supports this proposition deals with the ALJ failing to cite and/or apply the *Stone* severity standard, not with the ALJ's failure to even consider the impairment as in this case.[5]  Moreover, *Chaparro* was decided on unrelated procedural grounds.   There, the Fifth Circuit rejected the claimant's argument that the ALJ had applied the wrong severity standard when he failed to cite to *Stone* because the petitioner had waived the issue when he failed to raise it before the district court.  *See Chaparro,* 815 F.2d at 1011.   For that reason, one district court considered any further statement by the *Chaparro* court regarding this issue as simply dicta.  *See Anderson v. Astrue*, No. 4:11-CV-317-Y, 2012 WL 4478964, at *8 n. 1 (N.D. Tex. Aug. 7, 2012).

The Commissioner also contends that the ALJ implicitly considered the combined effects because she cited to the appropriate regulation and relied on physicians' opinions that considered the impairments.  (Doc. 22:3-4).  However, simply citing to the appropriate regulation does not

---

[5] *See, e.g.*, *Constancio v. Shalala*, 56 F.3d 1386, 1995 WL 337937, at *1–2 (5th Cir.1995); *Lynch v. Shalala*, 19 F.3d 14, 1994 WL 93270, at *2–3 (5th Cir.1994); *Reyes v. Sullivan*, 915 F.2d 151, 154 n. 1 (5th Cir.1990); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir.1988); *Jones v. Bowen*, 829 F.2d 524, 526 n. 1 (5th Cir.1987); *Shipley v. Secretary*, 812 F.2d 934, 935 (5th Cir.1987); *Lopez v. Bowen*, 806 F.2d 632, 634 n. 1 (5th Cir.1986); *but see Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000) (case adjudicated at step five); *Ramos v. Astrue*, No. 3:10–CV–1495–BD, 2011 WL 2469582, at *4 (N.D.Tex. June 21, 2011) (Kaplan, Mag. J.) ("The Fifth Circuit has never held that *Stone* applies only to cases where the claimant is found not disabled at Step 2. To the contrary, the failure to apply the correct severity standard has been held to be an independent and sufficient reason to require remand in cases adjudicated beyond the second step of the sequential evaluation analysis."); *Padalecki v. Astrue*, 688 F.Supp.2d 576, 581 (W.D.Tex.2010).

necessarily mean the ALJ complied with it.   Where, as here, the record is full of multiple

diagnoses of hypertension, the Court cannot simply assume the ALJ considered it.  Likewise, the

ALJ cannot simply incorporate the consulting physician's opinion of the limiting extent of the

hypertension because the ALJ failed to even consider if it was a medically determinable

impairment at all.   Deciding that the impairment was not limiting even before considering if it

was even a medically determinable impairment is putting the cart before the horse.   The ALJ

must first determine whether the medically determinable impairment is severe or not and must

explain her reasoning if the medical records support the complaint, as they do here.   "The ALJ's

decision must stand or fall with the reasons set forth in the ALJ's decision[.]"  *Newton*, 209 F.3d

at 455.   Because the ALJ's decision fails to provide a reason, it follows that the decision must

fall.

Finally, the Commissioner states that regardless, the mere presence of hypertension is not

disabling because it is controlled by medication.  (Doc. 22:4).   When the record indicates that

hypertension can be controlled with medication, the hypertension is not disabling.  *James v.*

*Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).   For support, the Commissioner points out that the

Plaintiff himself reported that medication improved his condition.  (R. 241).   However, a review

of the medical history shows that notwithstanding the Plaintiff's belief that his condition had

improved, none of the physicians who diagnosed and treated Plaintiff for hypertension stated

that the hypertension was under control.   Between January 14, 2008 and October 2009,

Plaintiff's blood pressure was taken four times.   Two of those times Plaintiff was prescribed

medication to treat the hypertension.   Despite being on the medication, Plaintiff was still

diagnosed with hypertension every subsequent time his blood pressure was taken.[6] (R. 218, 219, 242).  During Plaintiff's visit with Dr. Amakiri in October 2009, the last physician in the record to see the Plaintiff and the same visit where Plaintiff indicated the medication improved his condition, the Plaintiff also stated that the severity of his hypertension was gradually worsening over time.   (R. 241).  The Court is not persuaded by this or any of the Commissioner's other defenses.

However, violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes that the error is not harmless.  *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003).   Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.  *Id.*

An ALJ is not required to discuss each and every bit of evidence as a factor in her determination.  *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994) (stating the ALJ did not have to "discuss the evidence that was rejected" when evaluating the claimant's complaints of pain).  However, the ALJ must evaluate the impairment once a claimant proves, by medical signs or laboratory findings, a medically determinable impairment which could reasonably produce the symptoms.  20 C.F.R. § 404.1529(c).  Here, the Plaintiff clearly proved he had a medically determinable impairment, and the ALJ was obligated to consider it.   Since it is

---

[6] Hypertension exists when a person's blood pressure is 140/90 mmHg or above most of the time. *See* Mayo Clinic, High blood pressure (hypertension), http://www.mayoclinic.com/health/blood-pressure/HI00043 (last visited Apr, 11 2013).  Over the course of four medical visits beginning in January 14, 2008 and ending in October 2009, Plaintiff's blood pressure was recorded at 151/96, 180/112, 130/90, and 161/95.

conceivable in this case that the ALJ's failure to consider Plaintiff's hypertension, both singly and in combination with his other impairments, resulted in an improper RFC assessment by the ALJ and consequently an improper disability determination, the error is not harmless and requires remand for additional administrative proceedings.

      *b.*     *Plaintiff's Left Hand and Right Lower Extremity Pain Claims*

Plaintiff also argues that the ALJ's failure to consider Plaintiff's pain in his hand and right lower extremity also necessitates remand. Plaintiff was diagnosed with limb pain on multiple occasions. Plaintiff reported pain in his hands and right lower extremity in his initial disability report (R. 151). Moreover, Plaintiff complained of pain in his limbs in clinical visits on April 10, 2009 and October 2009. (R. 218, 240-41). On each occasion, Plaintiff was diagnosed with limb pain and hand pain or painful swelling of the limbs. (R. 218, 243). The ALJ failed to specifically address either complaint other than noting the diagnoses. (R. 14).

The Commissioner argues that the ALJ's finding of osteoarthritis may encompass Plaintiff's complaints of hand and right lower extremity pain. (Doc. 22:2 n. 1). Just as likely, the finding of osteoarthritis could also refer solely to Plaintiff's back pain. It is impossible for the Court to determine from the ALJ's Decision whether the ALJ addressed Plaintiff's pain complaints of the hand and right lower extremity. Because the case will be remanded on other separate grounds, the evidence regarding Plaintiff's pain in his hands and right lower extremity will naturally be revisited. The ALJ can use this opportunity to clarify the finding and revisit whether Plaintiff's claimed impairments should have been included among his severe

impairments at step two.

      2.  ALJ's Legal Error Requires Remand

      The Court finds that the ALJ failed to consider Plaintiff's hypertension both separately and in combination with Plaintiff's other impairments. Because remand is required pursuant to the ALJ's legal error at step two, the Court will not consider the remaining issues for review. This finding will necessarily require the ALJ to reformulate Plaintiff's RFC to include this and any other additional impairments that may be determined on remand.  However, upon remand, the Commissioner should ensure that he properly considers such issues.

### CONCLUSION

      The Court concludes that the ALJ's decision is not supported by substantial evidence and does not comport with relevant legal standards.  Based on the foregoing, it is hereby ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further consideration and administrative proceedings.  A separate judgment in accordance with this Memorandum Opinion will issue this date.

      **SIGNED and ENTERED on** April 19, 2013.

                    _____

                    ANNE T. BERTON
                    UNITED STATES MAGISTRATE JUDGE